PEOPLE v MOREY

Docket No. 112623. Argued October 12, 1999 (Calendar No. 3). Decided December 22, 1999.

Sherry Ann Morey was convicted by a jury in the Kent Circuit Court, David Soet, J., of pandering and accepting the earnings of a prostitute. The Court of Appeals, GRIFFIN, P.J., and D. E. HOLBROOK JR., and NEFF, JJ., affirmed the conviction of accepting the earnings of a prostitute, but reversed the pandering conviction on the ground of insufficiency of the evidence. 230 Mich App 152 (1998) (Docket No. 193900). The people appeal.

In a unanimous opinion by Justice MARKMAN, the Supreme Court *held*:

Insufficient evidence was presented to support the defendant's conviction of pandering.

1. The narrow question presented is whether the word "prostitute" as used in MCL 750.455; MSA 28.710 signifies a status, that is, does it describe a person with respect to her chosen livelihood, or does "prostitute" merely signify a choice to engage in an activity, that is, is a person a prostitute while engaging in an act of prostitution, but ceases to be one when the act ceases.

2. Since 1893 in *People v Cook*, 96 Mich 368, the Supreme Court has treated the term "prostitute" as describing a person's status or chosen livelihood. It is reasonable to presume that the Legislature intended to punish separately and more severely those individuals who persuade or attempt to persuade a female to begin performing acts of prostitution, conduct going beyond mere facilitation of prostitution. Certainly society has a greater interest in protecting innocent victims from taking the first step toward a career of prostitution than it has in preventing further acts of prostitution by those who have already succumbed to that lifestyle. In light of the degree of harm to society, it is not unreasonable to impose a more severe penalty on the predators of innocent females. Consequently, it is reasonable to conclude that the Legislature intended to punish more severely those who recruit females into the practice of prostitution than those who merely facilitate a female's existing decision to engage in additional acts of prostitution.

3. With respect to the prosecutor's burden of proof, the most direct evidence in the majority of cases will be the complainant's testimony that she never performed an act of prostitution before the defendant enticed her to do so. Whether a female is already a prostitute is a factual question left to the jury. In cases in which a female has performed acts of prostitution in the past, but nonetheless is charged with inducing her to become a prostitute, the jury must determine whether she has effectively abandoned prostitution, only to be led astray again by the defendant.

4. In the instant case, the prosecutor failed to present evidence demonstrating beyond a reasonable doubt that the women involved were not prostitutes before their employment with the defendant, or that the defendant induced, persuaded, inveigled, or enticed them to become prostitutes. At best, the evidence merely showed that the defendant induced, persuaded, inveigled, or enticed them to perform acts of prostitution.

Affirmed.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *Vicki L. Seidl*, Assistant Prosecuting Attorney, for the people.

*Jeanice Dagher-Margosian* for the defendant-appellee.

MARKMAN, J. Defendant was convicted by a jury of pandering, MCL 750.455; MSA 28.710, and accepting the earnings of a prostitute, MCL 750.457; MSA 28.712. The Court of Appeals affirmed the conviction for accepting the earnings of a prostitute,[1] but reversed the pandering conviction on the ground of insufficiency of the evidence. We granted leave to consider whether sufficient evidence was presented

---

[1] This Court denied defendant's application for leave to appeal the Court of Appeals decision affirming her conviction for accepting the earnings of a prostitute. 459 Mich 954 (1999).

to support defendant's conviction for pandering, 459
Mich 954 (1999), and conclude that it was not.

The facts of this case were accurately set forth in
the published decision of the Court of Appeals:

> A Grand Rapids police officer, taking part in an under-
> cover operation designed to curtail prostitution, called
> defendant's massage service from a hotel room and made
> an appointment for a massage at a cost of $75 an hour.
> Defendant agreed to send over a blonde in her mid-twenties
> with a nice figure. Shortly thereafter, a masseuse calling
> herself "Heather" and later identified as Christine Hanlon
> arrived at the hotel room. Hanlon had the officer disrobe
> and proceeded to give him a nonsexual massage. After
> twenty minutes, the officer asked if there were any "extras"
> available; after negotiations, Hanlon agreed to have sexual
> intercourse with him for an additional $100. When Hanlon
> completely undressed and crawled into bed with him, he
> gave a signal and his fellow officers rushed in from an
> adjoining room and arrested Hanlon for soliciting for prosti-
> tution. [MCL 750.448; MSA 28.703.]

> Hanlon agreed to cooperate with the police by telephon-
> ing defendant and asking her to send a second masseuse to
> the room under the pretext that the officer wished to have
> sex with two women. Hanlon specifically used the word
> "sex" twice in her conversations with defendant, making it
> clear that the customer was interested in sex for money.
> Defendant replied that she would send a masseuse named
> Patti Jo Carlton.

> When Carlton arrived, she had the officer lie on the bed
> and gave him a brief massage. She then reached for his
> penis as if to masturbate him. He stopped her by asking
> what else was available. Carlton stated that she would per-
> form oral sex on him for $100. He agreed, and Carlton
> started to perform the act. She was then arrested. Shortly
> thereafter, a female police officer drove Hanlon and Carlton
> to a local restaurant parking lot to meet with defendant.
> Hanlon handed defendant $300, of which $150 was for time
> she and Carlton spent in the hotel room, and $150 was
> attributable to other "calls" the two had made. Defendant

was then arrested. [230 Mich App 152, 154-155; 583 NW2d 907 (1998).]

The pandering statute, MCL 750.455; MSA 28.710, sets forth eight activities for which a defendant may be charged:

> Any person [1] who shall procure a female inmate for a house of prostitution; or [2] who shall induce, persuade, encourage, inveigle or entice a female person to become a prostitute; or [3] who by promises, threats, violence or by any device or scheme, shall cause, induce, persuade, encourage, take, place, harbor, inveigle or entice a female person to become an inmate of a house of prostitution or assignation place, or any place where prostitution is practiced, encouraged or allowed; or [4] any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade, encourage, inveigle or entice an inmate of a house of prostitution or place of assignation to remain therein as such inmate; or [5] any person who by promises, threats, violence, by any device or scheme, by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, or having legal charge, shall take, place, harbor, inveigle, entice, persuade, encourage or procure any female person to enter any place within this state in which prostitution is practiced, encouraged or allowed, for the purpose of prostitution; or [6] who shall inveigle, entice, persuade, encourage, or procure any female person to come into this state or to leave this state for the purpose of prostitution; or [7] who upon the pretense of marriage takes or detains a female person for the purpose of sexual intercourse; or [8] who shall receive or give or agree to receive or give any money or thing of value for procuring or attempting to procure any female person to become a prostitute or to come into this state or leave this state for the purpose of prostitution, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 20 years. [Numerals added for ease of reference.]

Defendant was charged under the second clause, to "induce, persuade, encourage, inveigle or entice a female person to become a prostitute . . . ." The Court of Appeals, relying on *People v Cook*, 96 Mich 368, 370; 55 NW 980 (1893), concluded that this section of the statute was created to penalize individuals who induce females who have not already engaged in prostitution to begin doing so. 230 Mich App 158.

The clear dispute in this case is with respect to the phrase "to become a prostitute." The prosecutor contends that any time a defendant induces a female[2] to perform an act of prostitution—whether it be her first act of prostitution or a subsequent act—the defendant has induced her "to become a prostitute"; accordingly, a defendant could be charged under this section of the statute an unlimited number of times with respect to the same female. Defendant, on the other hand, makes a reasonable argument that once a female has performed an act of prostitution she is a prostitute and can no longer be enticed to become what she already is; she can only be enticed to *continue* being a prostitute. Thus, the narrow question is whether the word "prostitute" signifies a status, that is, does it describe a person with respect to her chosen livelihood, or does "prostitute" merely signify a choice to engage in an activity, that is, one is a prostitute while engaging in an act of prostitution, but ceases to be a prostitute when the act ceases.

We review questions of statutory construction de novo. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). In doing so, our purpose is

---

[2] In conformity with the statutory language, the term "female" is used throughout this opinion.

to discern and give effect to the Legislature's intent. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995); *Luttrell v Dep't of Corrections*, 421 Mich 93; 365 NW2d 74 (1984).

In determining the plain meaning of the phrase, "to become a prostitute," we consider not only the meaning of the phrase itself, but also "its placement and purpose in the statutory scheme." *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995). "The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern," *People ex rel Twitchell v Blodgett*, 13 Mich 127, 168 (1865) (COOLEY, J.), and as far as possible, effect must be given to every word, phrase, and clause in the statute. *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994). Where, as here, the Legislature has not expressly defined terms used within a statute, we may turn to dictionary definitions to aid our goal of construing those terms in accordance with their ordinary and generally accepted meanings. *Oakland Co Bd of Co Rd Comm'rs v Mich-*

*igan Property & Casualty Guaranty Ass'n,* 456 Mich
590, 604; 575 NW2d 751 (1998).

The word "become" means "to come, change, or
grow to be (as specified): *to become tired*" or "to
come into being; develop or progress into: *She
became a ballerina.*" *Random House Webster's College
Dictionary* (1997), p 121. A "prostitute" is "a woman
who engages in sexual intercourse for money; whore;
harlot." *Id.,* p 1084. Thus, "to become a prostitute"
means to change, grow to be, or develop into a
woman who engages in sexual intercourse for money.

We begin by examining *People v Cook, supra,* a
case with more than one hundred years of precedent-
ial value, in which this Court considered the lan-
guage, "to solicit or in any manner induce a female to
enter [a house of ill fame] for the purpose of becom-
ing a prostitute . . . ." 96 Mich 371. The trial court in
*Cook* had instructed the jury that the Legislature
could not have intended to "forgive the person whose
business it was to solicit women of pronounced bad
character from one house of ill fame to another," *id.*
at 372, but this Court disagreed, pointing out that the
next clause of the statute distinguished (1) procuring
a female to enter a house of ill fame "for the purpose
of prostitution" from (2) procuring a female for the
purpose "of becoming a prostitute." Thus, this Court
concluded that the Legislature recognized a differ-
ence between performing acts of prostitution and the
status of being a prostitute, explaining that, "the word
'becoming,' as used in this statute, implies a change
of state or condition, and that one who is already a
prostitute cannot, within the meaning of the statute,
become what she already is." *Id.* at 371.

The prosecutor contends that changes in the statutory language since *Cook* indicate a legislative intent to address the holding in *Cook* and broaden the scope of the pandering statute. In *Cook*, the offense in dispute was that of encouraging a female to "enter [a house of ill repute] for the purpose of becoming a prostitute"; however, under the corresponding section of the current statute, the offense is now completed by merely procuring a female inmate "for a house of prostitution." From this, the prosecutor concludes that the Legislature, in response to *Cook*, broadened the language to proscribe procuring a female to become an inmate of a house of prostitution *regardless* of whether she was already a prostitute. This is not an unreasonable conclusion. However, following this theory to its logical conclusion, we must also presume that the Legislature remained aware of the holding in *Cook* when it chose to include the term "to become a prostitute" in the next clause of the same statute—the clause at issue here. Moreover, there remains support within the current statutory language, adopted in 1931,[3] that the Legislature continues to differentiate between acts of prostitution and the status of being a prostitute.

Under the eighth clause of the pandering statute, it is a felony to "receive or give or agree to receive or give any money or thing of value for procuring or attempting to procure any female person to become a prostitute or to come into this state or leave this state for the purpose of prostitution." This clause consists of two components—first, one may not exchange money in an attempt to procure a female "to become

---

[3] 1931 PA 328, § 455.

a prostitute," and second, one may not exchange money in an attempt to procure a female to come into or leave this state "for the purpose of prostitution." This supports a conclusion that "to become a prostitute" is distinguishable from performing an act of prostitution.[4] Similar support is found within MCL 750.459; MSA 28.714, which proscribes transporting a female into, through, or across this state *either* "for the purpose of prostitution" *or* intending to induce, entice, or compel her "to become a prostitute."

In *People v Slipson*, 154 Mich App 134; 397 NW2d 250 (1986), the Court of Appeals considered the statutory language before us with respect to two charges against the defendant, and, as in the instant case, relied on *Cook, supra*, to conclude that, where the defendant believed one female had engaged in prostitution before he hired her for his "escort service," and where the other female had, in fact, engaged in prostitution before the defendant hired her, the defendant could not be charged with encouraging either female "to become a prostitute." *Slipson, supra* at 138-139. On appeal, this Court ordered that the cases be remanded to the respective district courts for further findings of fact. *People v Slipson*, 428 Mich 858 (1987). This Court ordered that, on remand, the charges were to be reinstated if, in the first case, the district court found that the defendant believed the

---

[4] Although not conclusive, the holding in *People v Beeler*, 308 Mich 622; 14 NW2d 519 (1944), suggests that this Court may have continued to interpret the pandering statute consistent with *Cook* after the 1931 statutory amendments. In *Beeler*, this Court concluded that sufficient evidence had been presented to support a finding that defendant had encouraged the victim "to become a prostitute." The Court expressly noted the victim's testimony with respect to the defendant's involvement in arranging acts of prostitution, and the victim's testimony that "she had never before committed any act of prostitution." *Id.* at 624.

complainant was not a prostitute at the time he hired her, and if, in the second case, the district court found that the complainant was not a prostitute at the time the defendant hired her. *Id.* From this, it is evident that this Court agreed with the Court of Appeals in *Slipson* that the disputed section of the pandering statute continues to recognize that someone who is already practicing prostitution cannot be enticed to become a prostitute.

A review of the related case law suggests that this Court has long treated the term "prostitute" as describing a person's status or chosen livelihood.[5] In *People v Costanza*, 306 Mich 415, 417; 11 NW2d 10 (1943), a witness was described as a "self-confessed prostitute," and in *People v Barrera*, 451 Mich 261, 264; 547 NW2d 280 (1996), this Court described a murder victim as "a part-time prostitute." In *Michigan ex rel Wayne Co Prosecutor v Bennis*, 447 Mich 719, 728; 527 NW2d 483 (1994), aff'd 516 US 442 (1996), reh den 517 US 1163 (1996), a witness testified that he had seen the defendant "talking to a prostitute on two separate occasions and [had] ushered the prostitutes away in both instances just as they were about to enter [the defendant's] vehicle." In each of these cases, women were identified as prostitutes while performing acts other than prostitution. Moreover, in *People v Heflin*, 434 Mich 482, 513; 456 NW2d 10

---

[5] This comports with the common notion that prostitution is "the world's oldest *profession.*" See, e.g., *Gora v City of Ferndale,* 456 Mich 704, 716, n 11; 576 NW2d 141 (1998) (recognizing that the goal of regulating massage establishments is to prevent them from being used as a front for prostitution, "which, as 'the oldest profession,' historically has been subject to pervasive regulation for perhaps longer than any other industry"); *Saskey's Lounge, Inc v Liquor Control Comm,* 29 Mich App 656, 658; 185 NW2d 840 (1971) (discussing a witness' testimony that "she had been engaging in her profession [prostitution] on the premises").

(1990), the defendant, "a prostitute," was charged with murder after using deadly force to defend herself against a rapist. This case in particular demonstrates that being a prostitute encompasses more than merely performing a sexual act in exchange for money. For if the defendant were being raped—by definition, a nonconsensual sexual act—she could not have also been exchanging that act for money.

This interpretation does not, as the prosecutor contends, obstruct justice by exonerating individuals who are merely "fortuitous enough to encourage someone who was already a prostitute to continue to engage in such activity." For example, in the instant case, defendant was, in fact, charged with and convicted of accepting the earnings of a prostitute. MCL 750.457; MSA 28.712.[6]

It is reasonable to presume that the Legislature intended to punish separately and more severely those individuals who persuade or attempt to persuade a female to begin performing acts of prostitu-

---

[6] We acknowledge that charging decisions are solely within the prosecutor's discretion, not the Court's. Nevertheless, we note that defendant's actions, on the basis of the facts before us, may have been violative of additional offenses within the prostitution section of the penal code. This is significant in light of the prosecutor's argument that, under defendant's interpretation of the statute, a defendant could avoid prosecution by merely providing females with prostitution experience rather than those with no such experience. First, because both Hanlon and Carlton were arrested for solicitation of prostitution, MCL 750.448;  MSA 28.703, the prosecutor may have had sufficient evidence to support a charge of aiding and abetting the solicitation of prostitution, MCL 750.450;  MSA 28.705. Second, the pandering statute itself proscribes encouraging a female "to enter any place within this state in which prostitution is practiced, encouraged or allowed, for the purpose of prostitution." MCL 750.455; MSA 28.710. Depending on the nature of the facility to which defendant sent Hanlon and Carlton, the prosecution may have been able to present a convincing case under this section of the pandering statute. Thus, the prostitution section of the penal code is not without penalties for those who engage in the same activities as defendant in this case.

tion. This conduct goes beyond mere facilitation of prostitution—these individuals prey on innocent females, attempting to induce them into a criminal livelihood. Certainly society has a greater interest in protecting innocent victims from taking the first step toward a career of prostitution than it has in preventing further acts of prostitution by those who have already succumbed to that lifestyle. In light of the degree of harm to society, it is not unreasonable to impose a more severe penalty on the predators of innocent females.

Indeed, each of the eight activities proscribed by the pandering statute describes activities that go beyond similar, but arguably less harmful, activities proscribed elsewhere, suggesting a legislative intent to punish more severely the more harmful activities. For example, procuring females to reside in a house of prostitution, or causing them to remain there, are felonies under the first, third, and fourth clauses of the pandering statute, and are punishable by up to twenty years imprisonment. MCL 750.455; MSA 28.710. This is far more severe than the misdemeanor imposed for merely letting a house, knowing that the lessee intends to use the house for purposes of prostitution, MCL 750.454; MSA 28.709, which carries a penalty of six months in the county jail or a $250 fine. It is reasonable to conclude that those who deal directly with females—bringing them into and causing them to remain in an environment devoted to prostitution—create a greater harm than the person who merely owns the house. Similarly, under the sixth clause of the pandering statute, facilitating *interstate* prostitution activities carries a separate and more severe penalty of up to twenty years imprisonment,

MCL 750.455; MSA 28.710, than the misdemeanor imposed for aiding and abetting a single act of prostitution, MCL 750.450; MSA 28.705, MCL 750.451; MSA 28.706, which carries a penalty of up to ninety days in jail or a $100 fine. Each clause of the pandering statute evidences a legislative intent to punish more severely those who make more harmful contributions to prostitution activities. Consequently, it is reasonable to conclude that the Legislature intended to punish more severely those who recruit females into the practice of prostitution than those who merely facilitate a female's existing decision to engage in additional acts of prostitution.[7]

With respect to the prosecutor's burden of proof, obviously, the most direct evidence in the majority of cases will be the complainant's testimony itself—a credible complainant's testimony that she never performed an act of prostitution before the defendant enticed her to do so may well suffice to prove this element to a jury. Relevant to this is MCL 750.453; MSA 28.708, which compels witnesses to testify in prostitution-related cases and provides them with immunity from prosecution, except for perjury. Whether a female is already a prostitute is a factual question left to the jury. In cases in which a female has performed acts of prostitution in the past, but the defendant is nonetheless charged with inducing her to become a prostitute, the jury must determine whether

---

[7] It may be the case in our society today that "massage" and "escort" services have largely replaced "houses of prostitution," and that the greater evil now lies with those who employ, rather than provide housing for, prostitutes. Be that as it may, it is the Legislature, not the courts, that is charged with addressing this change, as it deems appropriate and necessary. *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979).

she has effectively abandoned prostitution, only to be led astray again by the defendant. Again, such a determination is a factual question left to the jury.

In the instant case, the prosecutor failed to present evidence demonstrating, beyond a reasonable doubt, that Carlton and Hanlon were not prostitutes before their employment with defendant, or that defendant induced, persuaded, inveigled, or enticed them to become prostitutes. At best, the evidence merely showed that defendant induced, persuaded, inveigled, or enticed Carlton and Hanlon to perform acts of prostitution. Consequently, the Court of Appeals properly reversed defendant's pandering conviction.[8]

Affirmed.

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred with MARKMAN, J.

---

[8] In light of our decision, we also acknowledge that the Court of Appeals correctly concluded that the standard jury instruction with respect to this offense misstates the prosecutor's burden. CJI2d 20.34 provides, in relevant part:

(1) The defendant is charged with the crime of pandering. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant [forced / persuaded / encouraged / tricked] [*state name*] to be a prostitute. A prostitute is a person who does sexual acts for money.

Insofar as this instruction uses the phrase "to be a prostitute" instead of "to become a prostitute," it is erroneous.