PEOPLE v LOUNSBERY

Docket No. 230005. Submitted June 6, 2001, at Lansing. Decided June 19, 2001, at 9:10 A.M.

Melissa L. Lounsbery was convicted following a bench trial in the 12th District Court, Lysle G. Hall, J., of operating a motor vehicle while under the influence of intoxicating liquor. The defendant appealed to the Jackson Circuit Court, challenging the district court's denial of her motion to suppress evidence of a toxicology report generated at the hospital to which she was taken by a police officer after her arrest, that indicated her blood alcohol level on the asserted ground that the report was barred under MCL 257.625a(8) because the prosecution failed to furnish the report to her at least two days before the day of trial, as required by subsection 625a(8). The defendant's discovery demand had asked the prosecution to provide the defendant with the results of any test administered to the defendant at the behest of the police. At the pretrial conference, which occurred more than two days before the trial, the prosecution had told the defendant the results of the toxicology test. The circuit court, Alexander C. Perlos, J., reversed the defendant's conviction and barred retrial on double jeopardy grounds, concluding that the prosecution had violated subsection 625a(8). The prosecution appealed by leave granted.

The Court of Appeals *held*:

The circuit court erred in concluding that subsection 625a(8) required the prosecution to furnish a copy of the toxicology report to the defendant at least two days before trial. Subsection 625a(8) only requires that the test results be furnished at least two days before trial. The prosecution complied with that requirement by communicating to the defendant at the pretrial conference the results of the toxicology test.

Reversed and remanded to the district court for reinstatement of conviction.

INTOXICATING LIQUORS — DRUNKEN DRIVING — CHEMICAL TESTS — DISCOVERY.

The results of a chemical test administered to a person charged with operating a motor vehicle while under the influence of intoxicating liquor or a controlled substance or while visibly impaired as a result of the consumption of intoxicating liquor or a controlled sub-

stance must be furnished to the defendant, upon request, by the prosecution at least two days before trial in order for the prosecution to introduce them at trial and the trial court to admit them into evidence; the statute that makes this requirement makes no similar requirement with respect to reports of such chemical tests (MCL 257.625a[8]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*William G. Rappleye*, for the defendant.

Before: HOOD, P.J., and WHITBECK and METER, JJ.

PER CURIAM. Following a bench trial, the district court found Melissa L. Lounsbery guilty of operating a motor vehicle while under the influence of intoxicating liquor (OUIL).[1] The circuit court reversed the conviction and barred retrial on double jeopardy grounds.[2] We granted the prosecutor's application for leave to appeal the circuit court's decision and now reverse and remand for reinstatement of Lounsbery's conviction.

### I. BASIC FACTS

Michigan State Police Trooper Troy Bonadurer was dispatched to Lounsbery's home at approximately 3:00 A.M. on October 7, 1999, to take a report regarding a motor vehicle accident. When he met Lounsbery, her breath smelled strongly of alcohol, she had watery, bloodshot eyes, and her speech was somewhat slurred. In light of his experience arresting

---

[1] MCL 257.625(1).
[2] US Const, Am V; Const 1963, art 1, § 15.

intoxicated drivers, he quickly concluded "that she was indeed under the influence of liquor at that time." When Trooper Bonadurer asked Lounsbery what had happened that evening, she said that she had been bowling, during which time she shared three pitchers of beer with four other people. After she drove her friend home, Lounsbery said, she noticed food debris on the passenger seat of her new car. Concerned that her husband would be upset at seeing the mess, she "reached over and began to brush the debris off the . . . front passenger seat of the vehicle. At that time she then struck the utility pole and she drove home from that point."

Because Lounsbery had been drinking, Trooper Bonadurer shifted the focus of his investigation from taking an accident report to investigating a possible OUIL. He concluded his interview with Lounsbery after approximately ten to fifteen minutes, and he arrested her and took her to Foote Hospital in his patrol car. During the drive to the hospital, he informed Lounsbery of her chemical test rights.[3] At the hospital, Trooper Bonadurer observed staff draw two tubes of blood from Lounsbery. The resulting toxicology report indicated that her blood alcohol level was 0.15 grams of alcohol per one hundred milliliters of blood.

## II. PROCEDURAL HISTORY

Before trial, Lounsbery made a broad discovery demand, requesting "[t]he results of any test, whether chemical or physical, take[n] of the Defendant, or administered on the person of the Defendant by

---

[3] MCL 257.625a(6)(b).

police officials." She also requested copies of the complaint, warrant, any damaging statements, and all police reports. However, she did not specifically ask for a copy of any chemical or physical test reports.

The prosecutor waited until the morning of trial, December 10, 1999, to give Lounsbery a copy of the toxicology report that determined her blood alcohol level. At trial, Lounsbery moved to suppress the toxicology report, contending that the prosecutor had violated MCL 257.625a(8), which provides:

> If a chemical test described in subsection (6)[4] is administered, the test results shall be made available to the person charged or the person's attorney upon written request to the prosecution, with a copy of the request filed with the court. The prosecution shall furnish the results *at least 2 days before the day of the trial.* The prosecution shall offer the test results as evidence in that trial. *Failure to fully comply with the request bars the admission of the results into evidence by the prosecution.*[5]

She argued that the prosecutor had triggered the exclusionary clause in the statute by failing to provide her with a copy of the report at least two days before trial. The prosecutor countered that Lounsbery had not suffered any prejudice from this delay because she had known of the test results much earlier, by the time of the pretrial hearing on November 3, 1999.

Though the district court concluded that Lounsbery knew about the results by the time of the pretrial hearing, it also noted that the prosecutor had agreed to complete discovery by providing her with a copy of

---

[4] MCL 257.625a(6).

[5] Emphasis added.

the toxicology report at that time. The district court also commented that the prosecutor's failure to turn over the report was a "technical" error. Though it did not intend to bar Lounsbery from arguing that she had suffered prejudice, the district court concluded "that the technical failure on [sic: of] the prosecution to include the document itself does not constitute a violation of either the discovery rule or that statute . . . ." Further, suppression appeared to the district court to be a drastic remedy that this case did not merit. Consequently, the district court denied the motion to suppress the report. Following Lounsbery's conviction, the district court sentenced her to twelve months' probation.

Lounsbery then appealed to the circuit court, arguing that the district court erred in requiring her to demonstrate prejudice in order to suppress the toxicology report because MCL 257.625a(8) plainly eliminated the need to show prejudice when the prosecutor fails to disclose a report in the prescribed time. In support of her argument, Lounsbery observed that the prosecutor had the toxicology report by October 13, 1999, well before the pretrial conference on November 3, 1999. The prosecutor handling the appeal, however, argued that the trial prosecutor had "furnished" Lounsbery with the test "results" in a timely manner and that the statute did not require the trial prosecutor to give her a copy of the report itself.

The circuit court held that Lounsbery had suffered prejudice under the statute from the prosecutor's failure to give her the toxicology report two or more days before trial. Having decided to reverse her conviction, the circuit court reached Lounsbery's related

argument that double jeopardy prevented the pros-
ecutor from retrying her and barred a new trial.

Now in the position of appellant, the prosecutor
makes three arguments. First, the prosecutor argues
that the circuit court erred in concluding that the
prosecutor had withheld the blood alcohol test results
and, therefore, violated the statute. Second, the pros-
ecutor argues that the circuit court erred in determin-
ing that Lounsbery had suffered prejudice, because
there is no factual support for that proposition. Third,
the prosecutor argues that any error was harmless
and certainly did not require complete reversal of
Lounsbery's conviction when the proper remedy
would be to order a new trial. In light of our conclu-
sion that the circuit court erroneously interpreted
MCL 257.625a(8) to reverse Lounsbery's conviction,
we reach only the prosecutor's first argument.

### III. BLOOD ALCOHOL TEST RESULT STATUTE

#### A. STANDARD OF REVIEW

The prosecutor's argument concerning what MCL
257.625a(8) requires presents us with an opportunity
to interpret and apply this statute, a task we under-
take with review de novo.[6]

#### B. STATUTORY INTERPRETATION

The "primary purpose of statutory interpretation is
to ascertain and give effect to the intent of the Legis-

---

[6] *People v Griffin*, 235 Mich App 27, 32; 597 NW2d 176 (1999).

lature."[7] The rules we use to determine this legislative intent are familiar:

> The first step in determining intent is to focus on the specific language of the statute; the Legislature is presumed to have intended the meaning it plainly expressed. If the statutory language is clear and unambiguous, further judicial construction is neither necessary nor permitted. If reasonable minds can differ with respect to the meaning of a statute, however, judicial construction is appropriate. The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. Statutory provisions must also be read in the context of the entire statute so as to produce an harmonious whole. Courts should avoid any construction that would render statutory language nugatory.[8]

The parties have competing theories concerning what the Legislature meant when it required the prosecutor to "furnish" test "results." Lounsbery contends that those results must be in writing and that, in the case against her, those results constituted the toxicology report. The prosecutor, however, insists that though results may be conveyed in writing, such as in a toxicology report, MCL 257.625a(8) requires nothing more than providing the toxicologist's final conclusion—the test "results"—regarding a blood alcohol level to a defendant.

Because the Legislature did not define the term "results" in the statute, consulting a dictionary in this instance is helpful in determining what the Legislature meant when it required prosecutors to "furnish"

---

[7] *People v Webb*, 458 Mich 265, 273-274; 580 NW2d 884 (1998).

[8] *People v Williams*, 236 Mich App 610, 612-613; 601 NW2d 138 (1999) (citations omitted).

test "results."[9] To "furnish" is a verb, which means "to provide or supply."[10] In relevant part, the noun "result" means an "outcome" or a "quantity, expression, etc., obtained by calculation."[11] Nowhere in this definition do we find that the word "results" requires such an "outcome" to appear in writing, as it would in a written toxicology report. Earlier versions of this statute obligated the prosecutor in an OUIL case to make blood alcohol test "results" "available" to the defendant and to give the defendant a copy of the "report" determining blood alcohol levels to the defendant at least two days before trial.[12] However, the Legislature excised this reference to a blood alcohol test "report" in 1991.[13] Accordingly, we infer that the Legislature knowingly intended to excuse the prosecutor from a statutory duty to disclose the blood alcohol test report in every OUIL case.[14]

In this case, the "result" or "outcome" of the toxicology analysis was the determination that Lounsbery's blood alcohol level was 0.15 grams of alcohol per one hundred milliliters of blood, which was above the legal limit.[15] There is no question that the prosecutor communicated this "result" to Lounsbery more than two days before trial. Thus, the circuit court erred in concluding that the statute required the prosecutor to "furnish" a copy of the toxicology report.

---

[9] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[10] *Random House Webster's College Dictionary* (2d ed).

[11] *Id.*

[12] See, e.g., 1982 PA 310; 1980 PA 515; 1971 PA 154.

[13] See 1991 PA 100; 1991 PA 95.

[14] See *Wisne v Dep't of Treasury*, 244 Mich App 342, 350; 625 NW2d 401 (2001) ("A change in a statutory phrase is presumed to reflect a change in the meaning.").

[15] MCL 257.625(1)(b).

Rather, the statute only requires the prosecutor to "furnish" the test "results" more than two days before trial. That is exactly what the prosecutor did in this case when the test "results" were disclosed to Lounsbery at the pretrial hearing on November 3, 1991.

Though Lounsbery claims that the prosecutor indicated that he would give the report to her, she has not alleged or provided any evidence that indicates the date by which the prosecutor promised to give her the report. This deprives us of a factual basis from which to discern whether the prosecutor violated this alleged informal, and self-imposed, deadline. More importantly, however, MCL 257.625a(8) simply does not stand as a benchmark for timeliness with respect to this report because the statute in its current form applies only to test "results," not toxicology "reports."

Of course, the conclusion that MCL 257.625a(8) does not require a prosecutor to give a defendant a copy of a toxicology report does not mean that such a report in this case or similar reports in other cases are necessarily safe from disclosure during the discovery process under MCR 6.201[16] or pursuant to *Brady v Maryland*.[17] As Lounsbery's dealings with the prosecutor indicate, there may be reasons other than MCL 257.625a(8) that spur a prosecutor to give a defendant the written report of blood alcohol test results rather than communicating those results in another manner. Nevertheless, we are unable to affirm the circuit court's decision to reverse the district court judgment on these other grounds for dis-

---

[16] See, generally, *People v Sheldon*, 234 Mich App 68; 592 NW2d 121 (1999).

[17] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

covery because Lounsbery only requested that the prosecutor give her any test "results" and the prosecutor complied with that request. Though she asked the prosecutor to give her copies of various reports and documents, her request did not include a demand for copies of any "report" or written findings of test results that would logically encompass the toxicology report generated in this case. The record does not disclose the substance of any other demand.

Reversed and remanded to the district court to reinstate[18] Lounsbery's conviction. We do not retain jurisdiction.

---

[18] Reinstating a valid criminal conviction does not violate a defendant's right to be free from double jeopardy. See *People v Jones*, 203 Mich App 74, 79, n 1; 512 NW2d 26 (1993).