*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JASON ANTHONY SIEGEL,

       Defendant-Appellant.

UNPUBLISHED
April 29, 2021

No. 348111
Macomb Circuit Court
LC No. 2014-002139-FH

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

By order of our Supreme Court, defendant appeals, by delayed leave granted,[1] the trial court's order denying his motion for relief from judgment. Defendant argues that a video he posted on Facebook did not fulfill the statutory requirements for "unconsented contact" under MCL 750.411s(8)(j). We agree that the Facebook video itself did not qualify as unconsented contact, but nevertheless affirm the trial court's denial of defendant's motion for relief from judgment because defendant reasonably knew that the video could have caused two or more instances of unconsented contact with the victim.

## I. UNDERLYING FACTS

As explained by this Court in *People v Siegel (Siegel I)*, unpublished per curiam opinion of the Court of Appeals, issued July 19, 2016 (Docket No. 326503), p 1:

> This case arises from a series of threats made by defendant against his former probation officer, [the victim]. Defendant left a threatening voicemail on [the victim]'s work phone and posted a threatening video on Facebook directed at [the victim]. Defendant claimed that he was not threatening [the victim] in the Facebook video and did not intend for her to see it.

---

[1] *People v Siegel (Siegel III)*, 505 Mich 1059 (2020).

Indeed, the victim did not learn of defendant's threatening Facebook video until an acquaintance notified her of the video. The victim then visited defendant's Facebook page where she was able to see the video. Even though defendant and the victim were not "friends" on Facebook, the victim was able to see the video because defendant had posted the video in unrestricted mode—meaning that anyone who visited defendant's Facebook page could see the video. No evidence was presented at trial of any individuals contacting the victim as a result of the video. Following a jury trial, defendant was convicted of unlawfully posting a message, MCL 750.411s(2)(a), and using a computer to commit a crime, MCL 752.796. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 3 to 15 years' imprisonment for each conviction.

Defendant appealed as of right and this Court affirmed his convictions in *Siegel I*. *Id*. Then, in 2018, defendant moved in the trial court for relief from judgment. Defendant's motion sought relief on several grounds, including, in relevant part, whether his Facebook video qualified as "unconsented contact" under MCL 750.411s(8)(j). The trial court denied defendant's motion and this Court denied his application for leave to appeal. *People v Siegel (Siegel II)*, unpublished order of the Court of Appeals, entered July 3, 2019 (Docket No. 348111). Defendant then applied for delayed leave to appeal to our Supreme Court. *People v Siegel (Siegel III)*, 505 Mich 1059 (2020). Our Supreme Court remanded the case to this Court, instructing:

> On order of the Court, the application for leave to appeal the July 3, 2019 order of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration of: (1) whether the defendant knew or had reason to know the video he posted on Facebook "could cause 2 or more separate noncontinuous acts of 'unconsented contact' with the victim," see MCL 750.411s(1)(a), see also MCL 750.411s(8)(j) (defining "unconsented contact"); *Buchanan v Crisler*, 323 Mich App 163, 179-181, 922 NW2d 886 (2018) (providing examples of conduct typically supporting cyberstalking convictions under MCL 750.411s); and (2) if the defendant did not know or have reason to know that posting the video could cause two or more separate "unconsented contacts" with the victim, whether the defendant can obtain relief under MCR 6.500, *et seq*. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Id*.]

We now consider defendant's arguments on appeal in light of our Supreme Court's remand order.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for relief from judgment for abuse of discretion. *People v McSwain*, 259 Mich App 654, 681; 676 NW2d 236 (2003). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015).

Furthermore, "[q]uestions of statutory interpretation are reviewed de novo." *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008). We examine "the plain language of the

statute; if the statutory language is plain and unambiguous, then no judicial interpretation is necessary or permitted, and we presume that the Legislature intended the meaning it plainly expressed." *People v Mattoon*, 271 Mich App 275, 278; 721 NW2d 269 (2006). Additionally, "effect must be given to every word, phrase, and clause." *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

## III. ANALYSIS

### A. PRELIMINARY CONSIDERATIONS

As an initial matter, we clarify the confines of our Supreme Court's order. Our Supreme Court instructed us to consider the language of MCL 750.411s and "whether the defendant knew or had reason to know the video he posted on Facebook 'could cause 2 or more separate noncontinuous acts of "unconsented contact" with the victim.' " *Siegel III*, 505 Mich at 1059. Defendant's brief appears to present arguments that extend beyond this directive. Specifically, defendant argues that "[t]he posting of a video, however unflattering or distasteful, is also recognized and protected as free speech, pursuant to the State and Federal Constitution." Defendant also avers that "[t]he conviction for using a computer to commit a crime under MCL 752.796 must also be vacated, since there was no evidence of a crime being committed by the use of [defendant's] computer." These arguments notwithstanding, "[w]hen an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012). Consequently, those arguments fall outside our Supreme Court's remand order, and, therefore, we will review only those issues identified by our Supreme Court: "whether the defendant knew or had reason to know the video he posted on Facebook 'could cause 2 or more separate noncontinuous acts of "unconsented contact" with the victim[]' " and, if not, whether he is entitled to relief under MCR 6.500, *et seq*. *Siegel III*, 505 Mich at 1059.

### B. UNCONSENTED CONTACT

We now turn to consideration of the language of MCL 750.411s. MCL 750.411s(1), prohibits "posting a message about the victim through any medium of communication, without the victim's consent," *Buchanan*, 323 Mich App at 179, as long as the following four elements are fulfilled:

> (a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.

> (b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.

> (c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 750.411s(1)(a) through(d).]

MCL 750.411s(8)(j) defines "unconsented contact" as

any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes any of the following:

(*i*) Following or appearing within sight of the victim.

(*ii*) Approaching or confronting the victim in a public place or on private property.

(*iii*) Appearing at the victim's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by the victim.

(*v*) Contacting the victim by telephone.

(*vi*) Sending mail or electronic communications to the victim through the use of any medium, including the internet or a computer, computer program, computer system, or computer network.

(*vii*) Placing an object on, or delivering or having delivered an object to, property owned, leased, or occupied by the victim.

We find *Buchanan* instructive in this instance, as our Supreme Court no doubt intended when it instructed us to consider defendant's appeal in light of *Buchanan*. In *Buchanan*, this Court considered MCL 750.411s and concluded that "unconsented contact" is contact to a victim caused by the defendant:

Notably, the focus of these elements [referring to MCL 750.411s(1)(a) through (d)] is on the conduct the actor intended to cause by posting the message and the effect of that conduct. Specifically, the first and second elements relate to the knowledge and intent of the person posting the message in terms of what conduct would result from the postings, while the third and fourth elements relate to the effect of the conduct that occurs because of the postings. That is, to violate the statute, when posting the message, the actor must know, or have reason to know, that posting the message "*could* cause" 2 or more separate noncontinuous acts of "unconsented contact." [*Buchanan*, 323 Mich App at 179, quoting MCL 750.411s(1)(a).]

The Court continued, stating

[A]s made plain by the statute, it is not the postings themselves that are harassing to the victim; rather, *it is the unconsented contacts arising from the postings that harass the victim.* In particular, the statute envisions a scenario in which a stalker posts a message about the victim, without the victim's consent, and *as a result of the posting, others initiate unconsented contacts with the victim.* These unconsented contacts, arising from the stalker's postings, result in the harassment of the victim. In this manner, by posting a message that leads to unconsented contact, the stalker is able to use other persons to harass the victim. [*Id*. at 179-180 (emphasis added).]

Under *Buchanan*, the "unconsented contact" analysis is not focused on the defendant's actions, such as Internet posts; rather, the focus is on unconsented contact by third parties caused by the defendant's actions. *Id*. at 178-180. Indeed, MCL 750.411s does not criminalize the act of a defendant threatening the victim; instead, the threat becomes criminalized by MCL 705.411s only if it caused or could cause two or more separate unconsented contacts. See *id*.

Defendant argues that the Facebook video does not fulfill the requirements of "unconsented contact" because he did not send the video directly to the victim. That is true, but defendant is not entitled to relief on that ground because his argument is misplaced. Whether defendant sent the video to the victim is not relevant to the question of whether he violated MCL 705.411s, because the video itself cannot constitute one of the unconsented contacts for purposes of MCL 705.411s. See *id*. Rather, the violation, if any, arises from any conduct that actually was, or could have been, caused by his video. See *id*. As such, defendant is not entitled to relief based on his actual argument on appeal. Nevertheless, as instructed by our Supreme Court, we now turn to whether defendant knew or had reason to know that his Facebook video could cause two or more instances of unconsented contact.

Defendant's video was posted as an "unrestricted" video on Facebook, meaning that it was available for the general public to view. Indeed, defendant testified, at trial, that he intended for his friends and family to view the video. Consequently, defendant had reason to know that his video could be seen by anyone who either visited defendant's Facebook page or who simply had access to Facebook. Indeed, the victim learned of the video through a third-party, and then accessed the Facebook page herself to watch the video. As such, the record establishes that the video was easily accessible. Given that defendant posted the video on Facebook in such a public way, he had reason to know that it could be seen by many people.

Turning to the video itself, the video's caption identified the victim by name; the title additionally connected her to the Macomb County Probation Department. In the video, defendant accused the victim of framing him and stated his threats to the victim were "for you guys," in reference to multiple individuals whom defendant stated were on his "team." The video also shows an ice hockey rink; in the video, defendant states that he is going to place the victim in the ice hockey rink ("right at the f***ing goal line"), and he then shoots hockey pucks at that spot. Defendant's video was both threatening and inflammatory. Defendant's accusation that the victim framed him, as well as his claim that he would hurt her on behalf of his "team," constituted conduct that easily could have caused unconsented contact by such third parties—in particular, those individuals whom defendant identified as being on his "team"—contacting the victim and repeating his accusations or even outright threatening her. Additionally, as explained earlier,

defendant posted his video in such a manner that the general public had access to it. Thus, the video satisfied the elements of MCL 750.411s(1)(a), because defendant knew or had reason to know that it could cause two or more instances of unconsented contact.[2] See *Buchanan*, 323 Mich App at 178-180. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for relief from judgment.

Finally, because we find that defendant knew or had reason to know that his video would cause two or more instances of unconsented contact, we need not consider the Supreme Court's second question, "if the defendant did not know or have reason to know that posting the video could cause two or more separate 'unconsented contacts' with the victim, whether the defendant can obtain relief under MCR 6.500, *et seq.*" *Siegel III*, 505 Mich at 1059.

## IV. CONCLUSION

For the reasons stated in this opinion, the trial court's order denying defendant's motion for relief from judgment is affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michelle M. Rick

---

[2] We note, however, that the following colloquy occurred at trial between the prosecutor and defendant:

> *Q.* Were you hoping by posting that video to incite the same anger in [your friends and family] towards Ms. [the victim] in this matter as you felt towards her?
>
> *A.* No. Just showing [me] having another rant and rave crazy session. The guy needs to get his medication and just show my family and friends a state or whatnot that I'm getting somewhere, you know.

Consequently, defendant testified that he did not intend for others to take any actions toward the victim as a result of his video. Of course, what defendant actually intended was a question for the jury. "Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992) (citation omitted; alteration in original), amended on other grounds 441 Mich 1201 (1992). And even apart from credibility determinations, a defendant's knowledge of what "*could* cause 2 or more separate noncontinuous acts of unconsented contact with the victim," MCL 750.411s(1)(a) (emphasis added), is distinct from whether "[p]osting the message is *intended* to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested," MCL 750.411s(1)(a) (emphasis added); violation of the statute requires both (and other elements as well). Even if defendant did not intend to cause fear, that lack of intent would not preclude the possibility of such conduct nevertheless causing it.