*469 Hathaway, J.
(concurring in part and dissenting in part). I concur with the majority’s conclusion that for purposes of scoring offense variable (OV) 10, the “vulnerability” of a victim is not limited to inherent or personal characteristics of the victim. I agree with this conclusion because MCL 777.40 expressly contemplates vulnerabilities that may arise out of a victim’s characteristics, as well as a victim’s relationships or circumstances. However, I dissent from the majority’s conclusion that a defendant’s preoffense conduct need not be directed at a specific victim in order to constitute “predatory conduct.” Instead, I believe that this Court correctly interpreted MCL 777.40(1)(a) in People v Cannon, 481 Mich 152; 749 NW2d 257 (2008), to require that a defendant’s preoffense conduct must have been directed at one or more specific victims for 15 points to be assessed under OV 10.
Accordingly, I would vacate the Court of Appeals’ holdings that a victim’s vulnerability is limited to personal or inherent characteristics of the victim and that defendant’s preoffense conduct was targeted at this victim. I would affirm the judgment of the Court of Appeals reversing defendant’s sentence and remanding this matter to the trial court for resentencing and instruct the trial court assess zero points for OV 10.
I. ANALYSIS
A. OFFENSE VARIABLE 10 — EXPLOITATION OF A VULNERABLE VICTIM
At issue in this case is whether defendant exploited a vulnerable victim by engaging in predatory conduct for purposes of assessing 15 points for OV 10. In deciding this matter, we must interpret the statute governing OV 10, MCL 777.40. When interpreting statutes, this Court must determine and give effect to the Legislature’s *470 intent.[1] The words used in the statute are the most reliable indicator of the Legislature’s intent and should be interpreted in light of their ordinary meaning and the context within which they are used in the statute.[2] When interpreting a statute, this Court avoids a construction that would render any part of the statute surplusage or nugatory.[3] Similarly, when determining how offense variables should be scored, this Court reads the sentencing guidelines statutes as a whole.[4]
MCL 777.40 governs OV 10 and provides:
(1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) Predatory conduct was involved....................15 points
(b) The offender exploited a victim’s physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status ........................................................................................10 points
(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious..............................................................5 points
(d) The offender did not exploit a victim’s vulnerability ...................................................................................0 points
(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.
(3) As used in this section:
*471 (a) “Predatory conduct” means preoffense conduct directed at a victim for the primary purpose of victimization.
(b) “Exploit” means to manipulate a victim for selfish or unethical purposes.
(c) “Vulnerability” means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.
(d) “Abuse of authority status” means a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher.
In Cannon, this Court considered MCL 777.40 in its entirety and specifically addressed the issue of when 15 points are properly assessed under OV 10.[5] Cannon clarified that “the Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.”[6] Instead, the focus of MCL 777.40(1(a) is on the exploitation of vulnerable victims involving predatory conduct.[7]
Pursuant to Cannon, 5 to 15 points should be assessed under OV 10 only when it is “readily apparent that a victim was ‘vulnerable,’ i.e., was susceptible to injury, physical restraint, persuasion, or temptation.”[8] In addition, MCL 777.40 requires that 5 to 15 points be assessed when the offender exploited a vulnerable vic *472 tim. The statute defines “exploit” as “to manipulate a victim for selfish or unethical purposes.”[9] If a “vulnerable victim” has not been “exploited,” MCL 777.40(1)(d) expressly mandates that OV 10 must be scored at zero points.
For a score of 15 points under OV 10, the offender who exploited the vulnerable victim must have also engaged in “predatory conduct.”[10] MCL 777.40(3)(a) defines “predatory conduct” as “preoffense conduct directed at a victim for the primary purpose of victimization.” Cannon clarified when 15 points should be assessed for predatory conduct by setting forth three analytical questions to aid lower courts:
(1) Did the offender engage in conduct before the commission of the offense?
(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
(3) Was victimization the offender’s primary purpose for engaging in the preoffense conduct?[11]
The three-pronged Cannon test for predatory conduct incorporates the statutory requirements of predatory conduct, exploitation, and vulnerability. Thus, all three prongs of the test must be met in order to assess 15 points for OV 10.[12]
B. PREDATORY CONDUCT
In this case, defendant did not engage in predatory conduct because his preoffense conduct was not di *473 rected at this victim, as this Court has concluded is required by MCL 777.40(1)(a). According to Cannon, the preoffense conduct “must have been ‘directed at a victim’ before the offense was committed.”[13] Cannon provided the following guidance regarding this part of the test:
A lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim. However, a lion that sees antelope, determines which is the weakest, and stalks it until the opportunity arises to attack it engages in conduct directed at a victim. Contrast that with an individual who intends to shoplift and watches and waits for the opportunity to commit the act when no one is looking. The individual has not directed any action at a victim.[14]
The majority focuses on the use of the phrase “a victim” rather than “the victim” in the definition of “predatory conduct” in MCL 777.40(3)(a) to conclude that the offender’s conduct need not be directed at a specific victim. But the definition of “vulnerability” in MCL 777.40(3)(c) requires that a victim have a “readily apparent susceptibility ... to injury, physical restraint, persuasion, or temptation.” This language suggests that, before points can be assessed for preoffense conduct, it must be clear that the victim was ascertainable before the offense took place. It cannot become “readily apparent” to an offender that a victim is susceptible before the offender identifies the victim.[15]
*474 However, it is more reasonable to conclude that the Legislature selected the term “a victim” rather than “the victim” simply because it contemplated that a defendant might victimize more than one victim. In the case of more than one victim, the Legislature intended 15 points to be assessed for OV 10 when the defendant directed predatory conduct at “a” preselected victim, but ultimately victimized multiple victims.[16]
In any situation in which a defendant engages in “nothing more than run-of-the-mill planning to effect a crime,” the community at large is still a conceivable target because the offender will inevitably carry out the offense against some member of the community.[17] However, that member of the community may only become the offender’s target by random chance. If simply targeting the community at large and then carrying out an offense against a random victim who comes along is sufficient to establish predatory conduct, then nearly any type of preoffense conduct will suffice for assessing 15 points under OV 10.[18] Under the majority’s analysis, *475 it is difficult to imagine a situation in which a person intending to carry out a crime would not engage in some type of preoffense conduct for the purpose of victimizing someone before actually selecting a victim to carry out the offense against. The majority’s construction of MCL 777.40(3)(a) lacks any limitation on the circumstances in which a court may assess the highest number of points possible under OV 10.[19]
The majority uses hindsight to suggest that defendant’s conduct was “directed at a victim” because he lay in wait for “a victim” whom he ultimately robbed. By *476 taking this approach, the majority essentially rewrites the applicable statute to state that an offender’s preoffense conduct must be “directed at a potential victim,” even if that victim is not identifiable at the time of the preoffense conduct.[20] In contrast, Cannon correctly concluded that an offender’s preoffense conduct must be directed at a specific victim. Cannon’s interpretation of MCL 777.40 was not only consistent with the statutory language, but it properly limited the assessment of 15 points to circumstances in which an offender’s preoffense conduct involved first selecting a specific victim to target.[21]
*477 In applying the second part of the Cannon test for predatory conduct, the Court of Appeals correctly acknowledged that a defendant’s conduct must have been directed at a specific victim; however, it then erroneously concluded that this defendant’s preoffense conduct was directed at this victim.[22] The Court of Appeals reasoned that even though defendant was initially looking for “any victim,” he eventually chose “a lone and isolated victim. . . .”[23] The Court of Appeals concluded that defendant’s actions were similar to a lion “focusing on the weakest antelope in the herd” because defendant waited for particular circumstances to arise before seizing his opportunity to commit the offense.[24] Accordingly, the Court of Appeals concluded that this was “not a random attack on just anyone in the parking lot but a planned attack on an individual perceived to be weak.”[25]
From the record, it is reasonable to conclude that defendant’s objective was to rob a shopper in the mall parking lot. To accomplish this offense, defendant waited in the mall parking lot for a shopper to come along. The prosecutor acknowledged that the victim may simply have been the first person who did come along. The apparent reasoning of the prosecutor and the Court of Appeals was that once a random person came along and defendant carried out his intended offense against that random person, defendant’s conduct was targeted at a specific victim. I disagree.
If defendant’s act of waiting for someone to come along and then robbing the unlucky person who happened to arrive in that location constituted preoffense *478 conduct sufficiently directed at a “specific” victim, there would be only rare circumstances in which this part of the Cannon test would not be met. It may be true that defendant waited for the right time to approach the victim and commit the offense; however, this same argument can be made about almost every offense involving an attack on an individual. Unless an offense is truly of a random nature, eventually every offender will select a victim or victims against whom to carry out their intended offenses.[26]
As previously noted, using the analogy suggested in Cannon, the Court of Appeals concluded that defendant’s actions were “akin to focusing on the weakest antelope in the herd.”[27] However, defendant’s preoffense conduct was much more analogous to a lion simply waiting near a watering hole, hoping that a herd of antelope will come to drink.[28] Defendant wanted to rob someone, presumably to get money and a vehicle. A shopping mall is a location where potential victims with money would almost certainly arrive. Therefore, defen *479 dant went to a shopping mall where he waited in the hope of a victim arriving. While it is true that defendant may have narrowed in on this particular victim during the short time between when the victim entered the parking lot and when she got out of her vehicle, almost every crime involves the offender’s eventually settling on one or more targeted persons and waiting for just the right moment to carry out the offense.
Cannon clearly directed that targeting a specific person, following that person, and waiting for the opportunity to commit an offense against that person is preoffense conduct sufficiently directed at a victim.[29] On the record in the instant case, I conclude that defendant’s preoffense conduct of waiting in the mall parking lot was not sufficiently directed at this victim.
Because a requirement of the Cannon test for predatory conduct cannot be met, and Cannon directed that all three prongs of the test must be answered affirmatively in order to properly assess 15 points for OV 10, I dissent from the majority’s conclusion that defendant is not entitled to resentencing.
II. CONCLUSION
I concur with the majority’s conclusion that, for purposes of scoring OV 10, the “vulnerability” of a victim is not limited to inherent or personal characteristics of the victim. However, I dissent from the majority’s conclusion that a defendant’s preoffense conduct need not be directed at a specific victim in order to constitute “predatory conduct.” I believe that the majority opinion creates an overly broad test for “predatory conduct” and misconstrues the language of MCL 777.40.
*480 Contrary to the majority’s analysis, I do not believe that defendant engaged in “predatory conduct.” This Court has held that a defendant’s preoffense conduct must be directed at a specific victim in order to constitute predatory conduct, and the record here does not reflect that defendant’s preoffense conduct was directed at this victim. Instead, the record only establishes that defendant was in a shopping mall parking lot waiting for someone to rob and that, ultimately, this victim arrived. Defendant’s preoffense conduct was simply run-of-the-mill planning to effect a crime, which is not “predatory conduct” for purposes of MCL 777.40(1)(a).
Accordingly, I would vacate the Court of Appeals’ holdings that a victim’s vulnerability is limited to personal or inherent characteristics of the victim and that defendant’s preoffense conduct was targeted at this victim. I would affirm the judgment of the Court of Appeals reversing defendant’s sentence and remanding this matter to the trial court for resentencing and instruct the trial court to assess zero points for OV 10.
Marilyn Kelly, J., concurred with Hathaway, J.

 People v Lowe, 484 Mich 718, 721; 773 NW2d 1 (2009), citing People v Koonce, 466 Mich 515, 518; 648 NW2d 153 (2002).

 People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).

 People v McGraw, 484 Mich 120, 126; 771 NW2d 655 (2009).

 Id. at 124-125.

 Cannon, 481 Mich at 156-162. In Cannon, the defendant and his two cohorts waited outside a Burger King until no customers were inside. They then entered the Burger King, where four employees were on duty, and committed a robbery. The trial court assessed 15 points for OV 10, following the prosecutor’s argument that defendant and his cohorts targeted the restaurant and planned their actions to victimize the employees. Id. at 154-155.

 Id. at 162.

 Id.

 Id. at 158.

 MCL 777.40(3)(b).

 MCL 777.40(1)(a).

 Cannon, 481 Mich at 162.

 Id.

 Id. at 160.

 Id.

 For example, in this case, when defendant decided to lie in wait in the mall parking lot, he did not know the identity of the victim he would eventually rob. The victim whom defendant eventually robbed was allegedly “vulnerable” because she was alone in the dark and outnumbered. However, suppose that defendant had engaged in exactly the same preoffense conduct but eventually robbed a group of three women in *474 broad daylight. Under the majority’s analysis, 15 points would still be assessed because simply lying in wait for any victim is sufficient to justify a score of 15 points for OV 10. The majority essentially disregards the statutory requirement that a victim’s vulnerability be “readily apparent.”

 For example, consider a situation in which a defendant selects a robbery target (Victim A) and stalks him, waiting for an opportunity to strike. When the best opportunity presents itself, however, Victim A has been joined by Victim B. The defendant seizes the opportunity and robs both Victim A and Victim B. Even though Victim A and Victim B would each be considered “a victim” of the eventual crime, only Victim A was “a victim” who was the target of defendant’s predatory conduct.

 Cannon, 481 Mich at 162.

 The majority’s analysis reads the requirement that the preoffense conduct be “directed at a victim” out of the statute. See People v Couzens, 480 Mich 240, 249; 747 NW2d 849 (2008) (“ ‘Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute.’ ”) (citation *475 omitted). Preoffense conduct for the primary purpose of victimization is always generally directed at victimizing the community at large. Thus, under the majority’s approach, any “preoffense conduct... for the primary purpose of victimization” will always be sufficient to assess 15 points for OV 10. MCL 777.40(3)(a).
Consider a defendant who lies in wait in a mall parking lot to rob someone who passes by. Before the defendant selects a victim to rob, the police observe him and attempt to detain him. He puts up a fight and attempts to flee. The officers catch him, and he is convicted of resisting arrest under MCL 750.81d(1). Under the majority’s approach, 15 points could he assessed for OV 10 could be scored at 15 points because defendant’s conduct was directed at the community at large for the primary purpose of victimization. It does not matter under the majority’s test that no victim was actually robbed or that the defendant did not engage in the preoffense conduct to carry out the crime of resisting arrest.

 The majority states that its analysis is not without a limiting factor because only “genuinely predatory conduct” can be used to justify a 15-point score for OV 10. But the guidance the majority offers regarding what constitutes “genuinely predatory conduct” is simply that it includes “e.g., lying in wait and stalking” and does not include “purely opportunistic criminal conduct.” Obviously, “purely opportunistic criminal conduct” cannot justify a 15-point score for OV 10 because such conduct is by its nature spontaneous and, therefore, will not be “preoffense” conduct. Thus, it is unclear what constitutes “genuinely” predatory conduct and whether the mere planning of a crime would suffice. Certainly, planning a crime involves “preoffense conduct... for the primary purpose of victimization” and exploits the community at large.

 See, e.g., Reed v Breton, 475 Mich 531, 550; 718 NW2d 770 (2006) (Kelly, J., dissenting) (“The interpretation offered hy the majority contradicts well-established rules of statutory construction because it adds words to the statute that the Legislature did not put there.”).

 In analyzing whether preoffense conduct was sufficiently directed at a victim, Cannon cited People v Kimble, 252 Mich App 269; 651 NW2d 798 (2002), as instructive. Cannon, 481 Mich at 160. In Kimble, the defendant drove around for an hour in search of a car he could steal so that he could sell its wheel rims. Kimble, 252 Mich App at 274. The defendant spotted the victim driving a car with valuable rims and followed her home. Id. at 274-275. After watching the victim pull into her driveway, the defendant shot the victim and stole her car. Id. The Court of Appeals reasoned that the preoffense conduct of seeking out a victim and following her home for the specific purpose of committing a crime against her constituted predatory conduct. Id. at 275. Cannon observed that once the defendant in Kimble had targeted the owner of the car with valuable rims, his act of following her and waiting for the opportunity to strike was “conduct directed at a victim.” Cannon, 481 Mich at 160.
The facts of the instant case are distinguishable from Kimble. In Kimble, the prosecutor presented evidence that the defendant was specifically looking for a vehicle with expensive rims, searched until he found the victim driving a car with expensive rims, and followed the victim for quite some time before shooting the victim in her driveway and stealing her car. Unlike in the record in Kimble, the record in this case does not reflect that the victim was specifically targeted for any reason other than that she happened to arrive in the shopping mall parking lot where defendant was waiting for someone to rob. In fact, the prosecutor acknowledged that this victim was probably a “random” target and that she may just have been the first person defendant came across.

 Huston, 288 Mich App at 394.

 Id.

 Id.

 Id.

 The majority dismisses language from Cannon — that a defendant’s preoffense conduct must be directed at one or more specific victims — as dictum. However, in Cannon we also stated that “the Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.” Cannon, 481 Mich at 162. This statement was not dictum, as it directly involved the issue in Cannon. Yet under the majority’s standard today, such “run-of-the-mill planning” could be used to assess 15 points for OV 10.

 Huston, 288 Mich App at 394.

 Cannon provided a hypothetical example explaining that “[a] lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a victim.” Cannon, 481 Mich at 160. But under the majority’s analysis, simply “lying in wait” is now sufficient to assess 15 points for OV 10. Thus, the majority’s analysis is directly contrary to the hypothetical example in Cannon that we crafted specifically to guide lower courts in determining what constitutes “predatory conduct.”

 Id.