*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DERRIUS LAMAR THURMOND,

Defendant-Appellant.

FOR PUBLICATION
October 26, 2023
9:10 a.m.

No. 361302
Washtenaw Circuit Court
LC No. 18-000695-FH

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

CAMERON, J.

Defendant appeals his jury trial convictions of inducing another person to become a prostitute (i.e., "pandering"), MCL 750.455(b), third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), and human trafficking, MCL 750.462b. The trial court sentenced defendant to concurrent prison terms of 72 months to 20 years for the pandering conviction, 57 months to 15 years for the CSC-III conviction, and 19 months to 10 years for the human-trafficking conviction. We affirm defendant's convictions of CSC-III and human trafficking, but vacate his conviction and sentence for pandering.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The charged offenses involve a single victim, EC. The prosecution argued that defendant recruited EC to engage in prostitution after they began dating in February or March 2018. Police became involved on July 20, 2018, when they stopped a witness, TK, as he was leaving a Motel 6 in Washtenaw County. TK told the police that he had arranged to meet a prostitute at the motel. He went to the room and gave a woman $200, but left almost immediately. Acting on this information, the police went to the motel room and found EC and another woman, ML, in the room. Officers saw a pair of men's shoes in the room, which prompted them to check the bathroom where they found defendant hiding in the bathtub. The police arrested defendant and took the two women into custody. Neither woman was charged.

At trial, EC explained that she was at a low point in her life when she met defendant and that she had a small child to care for. She explained that defendant had encouraged her to engage in prostitution by promising that he would help her buy a house and a car. EC admitted that she

-1-

had prostituted herself in Jackson County a few months before the charged activity in Washtenaw County, and she had engaged in prostitution on other occasions at defendant's request. The day EC met with TK, defendant sent a taxicab to pick her up under the ruse of celebrating her birthday at the Motel 6. When she arrived, EC discovered that defendant had made arrangements for her to have sex with TK in exchange for money. EC also testified that defendant had physically and sexually assaulted her on two separate occasions prior to the charged offense in this case. Finally, the prosecution presented testimony from other witnesses who similarly described defendant's recruitment and mistreatment of other women. Defendant was convicted and sentenced as noted.

## II. PANDERING

Defendant argues that the trial court erred by denying his motions for a directed verdict and judgment notwithstanding the verdict ("JNOV") on the charge of pandering. We agree.

## A. STANDARD OF REVIEW

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). These same standards apply to a motion for a directed verdict or a JNOV. *People v Duenaz*, 148 Mich App 60, 65-66; 384 NW2d 79 (1985).

Any questions of law, including questions of statutory interpretation, are reviewed de novo. *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999).

> In doing so, our purpose is to discern and give effect to the Legislature's intent. We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. [*Id*. at 329-330 (citations omitted).]

## B. LAW AND ANALYSIS

Defendant was charged with violating MCL 750.455(b) by inducing EC to become a prostitute between June 2018 and July 20, 2018, in Washtenaw County. MCL 750.455(b) provides that it is unlawful to "[i]nduce[], persuade[], encourage[], inveigle[], or entice[] a person to *become*

*a prostitute*." (Emphasis added.)  The narrow issue in this case is whether defendant could be convicted of inducing or enticing EC to "become a prostitute" under this statute.

In *Morey*, 461 Mich at 328-329, our Supreme Court addressed MCL 750.455(b)[1] to determine whether the defendant should have been charged with enticing or inducing a woman to become a prostitute where the woman had previously engaged in acts of prostitution.  The Court stated:

> The clear dispute in this case is with respect to the phrase "to become a prostitute."  The prosecutor contends that any time a defendant induces a female to perform an act of prostitution—whether it be her first act of prostitution or a subsequent act—the defendant has induced her "to become a prostitute"; accordingly, a defendant could be charged under this section of the statute an unlimited number of times with respect to the same female. Defendant, on the other hand, makes a reasonable argument that once a female has performed an act of prostitution she is a prostitute and can no longer be enticed to become what she already is; she can only be enticed to *continue* being a prostitute.  Thus, the narrow question is whether the word "prostitute" signifies a status, that is, does it describe a person with respect to her chosen livelihood, or does "prostitute" merely signify a choice to engage in an activity, that is, one is a prostitute while engaging in an act of prostitution, but ceases to be a prostitute when the act ceases. [*Morey*, 461 Mich at 329; footnote omitted.]

The Court held that the statute did not apply to a person who had already worked as a prostitute.  *Morey*, 461 Mich at 329-334.  It recognized that the term "prostitution" has been used to refer to a profession or a means to earning a livelihood, and concluded that one typically could not be enticed "to become a prostitute" more than once.  *Id.* at 334-335.

Given this holding, we conclude that the evidence did not support defendant's conviction of inducing, persuading, or enticing EC to "become a prostitute" under MCL 750.455(b).  At trial, EC unequivocally testified that she first performed acts of prostitution for defendant in Jackson County, months before the charged offense.  EC continued to engage in prostitution on other occasions leading up to the charged offense.  EC stated that this did not occur every day, but it was an ongoing activity.  Indeed, EC also described the procedure that defendant would regularly follow when she would engage in prostitution.  Defendant arranged for the acts of prostitution and would tell EC what was going to happen and when, and he would hide in the bathroom during the encounters.  He would then require that she turn over the money to him.

In *Morey*, the Court explained that a defendant could be convicted under MCL 750.455(b) with respect to a person who previously performed acts of prostitution in the past if the person had effectively abandoned prostitution, only to be led astray again by the defendant.  *Morey*, 461 Mich at 337-338.  But in this case, there was no interruption to EC's prostitution activity, or any indication that EC had "abandoned prostitution" before the charged events in this case.  *Id.*  On

---

[1] Although MCL 750.455 has been amended since the Supreme Court decided *Morey*, see 2014 PA 331, effective October 16, 2014, the language in Subsection (b) has not changed.

the contrary, EC testified that she continued to engage in acts of prostitution at defendant's request, and there was no cessation in this activity before the charged events in Washtenaw County.

The prosecutor attempts to salvage defendant's pandering conviction by noting it could have used defendant's prior conduct in Washtenaw County under MCL 762.8, which provides that "[w]henever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect." But here, defendant was not charged with violating MCL 750.455(b) on the basis of his conduct in Jackson County. And even if he had been charged there, the offense of pandering was complete once defendant persuaded EC to become a prostitute in Jackson County. Thus, the prosecutor's reliance on MCL 762.8 to buttress defendant's pandering conviction is misplaced because that statute contemplates "the culmination of 2 or more acts done in the perpetration of that felony[,]" which did not happen here. We therefore vacate defendant's conviction and sentence for pandering.

We are nevertheless compelled to address our prior opinion, *People v Slipson*, 154 Mich App 134; 397 NW2d 250 (1986), which is no longer binding precedent in Michigan.[2] In *Slipson*, the defendant was charged with inducing, persuading, or encouraging a female person to become a prostitute under MCL 750.455. *Slipson*, 154 Mich App at 136. The charges were dismissed at the preliminary exam because the circuit court judge concluded that the woman had been convicted of prostitution six months earlier, and therefore the defendant could not have enticed her "to become" a prostitute. *Id*. at 137. On appeal to this Court, we affirmed the dismissal. *Id*. at 139. In doing so, we concluded that "[w]hile at some future point in time a person convicted of prostitution in the past may no longer be considered a prostitute so as to be able to be induced 'to become' a prostitute again for purposes of the pandering statute, five or six months is not long enough." *Id*. at 139. We disagree with the suggestion that, under the statute, abandonment of prostitution requires a certain time period. Unless there is undisputed evidence like we have here, factual questions of whether a defendant has enticed a person back into prostitution after the activity had been abandoned is a question of fact left to the jury. There is no legal basis for arbitrarily setting the period of abandonment at more than "five or six months." We overrule *Slipson* to the extent it imposes a temporal requirement on abandonment of prostitution.

## III. OTHER-ACTS EVIDENCE

Next, defendant argues that the trial court erred by admitting other-acts testimony pursuant to MRE 404(b)(1). We disagree.

## A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Washington,* 468 Mich 667, 670-671; 664 NW2d 203 (2003). A court abuses its

---

[2] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *People v Craig*, 342 Mich App 217, 226 n 3; 994 NW2d 792 (2022) (quotation marks and citation omitted).

discretion occurs when it chooses an outcome outside the range of reasonable and principled outcomes. *People v Galloway*, 335 Mich App 629, 637; 967 NW2d 908 (2020). Any preliminary questions of law are reviewed de novo. *Washington,* 468 Mich at 670-671.

## B. LAW AND ANALYSIS

## 1. FOUNDATIONAL LAW

Other-acts evidence is governed by MRE 404(b). "The general rule under MRE 404(b) is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). "Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). Other-acts evidence may, however, be admissible for another purpose. MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), this Court articulated the factors courts must consider when deciding whether to admit other-acts evidence under this rule:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

## 2. WITNESS TESTIMONY

Defendant first challenges the trial court's admission of testimony from two witnesses regarding their experiences with defendant. This evidence was admitted under MRE 404(b)(1) to show defendant's plan or scheme to operate out of various area motels and target young, vulnerable women to engage them in prostitution.[3] At trial, one witness testified that defendant invited her and her friend to a motel and then accused them of stealing his money. Defendant demanded that they remain at the motel and engage in prostitution to pay him back. When they refused to cooperate, defendant assaulted them. Another witness testified that she was lured to a motel under the guise of interviewing for a job there. Defendant sent a taxicab to pick the woman up. When

---

[3] The trial court held that the evidence was independently admissible under MCL 768.27b.

-5-

she arrived, she met a man with a name associated with defendant. The woman had a drink, which she set down to use the bathroom. After leaving the bathroom, she took a sip from her drink and lost consciousness. When she awoke, the man was gone and the woman noticed that her pants were unbuttoned. According to defendant, there is not a sufficient similarity between these events and the charged conduct.

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin*, 463 Mich 43, 63; 614 NW2d 888 (2000). "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). "A high degree of similarity is required—more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive." *People v Smith*, 282 Mich App 191, 196; 772 NW2d 428 (2009).

The other-acts witnesses testified that defendant targeted young, vulnerable women to engage them in prostitution or otherwise sexually exploit them was relevant to the charged conduct in this case. That evidence, coupled with EC's testimony that defendant had encouraged her to prostitute herself, demonstrated that defendant employed a general scheme or pattern to target and abuse young, vulnerable women. EC testified that she initially agreed to prostitute herself because defendant had promised to help her buy a house or car, and she explained that she continued this activity because she feared defendant, who would assault her and threaten her and her family if she refused. He operated out of a few motels in both Washtenaw and Jackson counties. On the date of the charged offense, defendant enticed EC to come to the Motel 6 in Washtenaw County under the guise of celebrating her birthday. The other-acts witnesses described a similar pattern of defendant using enticements (e.g., promises, jobs, or money) to lure or recruit them to motels for purposes of prostituting or sexually exploiting them, and resorting to threats and violence if they refused. In this case, there were sufficient similarities between the other incidents and the charged offenses such that the trial court did not abuse its discretion in admitting the evidence.[4]

Defendant relies on *Denson*, 500 Mich 385, in support of his argument that the other-acts evidence was erroneously admitted in this case. In *Denson*, the defendant was charged with assault with intent to commit murder for an offense in October 2012, and the prosecution introduced under MRE 404(b)(1) evidence of the defendant's involvement in a prior assault in 2002. The Court stated that the prosecution was relying on the alleged similarity between the two assaults to establish the relevancy of the prior assault, but concluded that "the only similarity between these two incidents is that both were assaults allegedly committed by defendant," and "the evidence of the 2002 incident was not probative of anything other than defendant's allegedly bad character and propensity to commit the charged offense." *Id.* at 406-407. But this case is distinguishable from *Denson* because, as discussed, there are similarities between the other incidents and the facts of this case beyond defendant's involvement.

---

[4] Evidence of other sexual assaults committed by defendant was also admissible under MCL 768.27b, given that defendant was also charged with sexually assaulting EC.

We also disagree with defendant that the other-acts evidence should have been excluded under MRE 403 because it was unfairly prejudicial. Unfair prejudice under MRE 403 does not refer to any damaging evidence, but rather to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citation omitted). MRE 403 requires the trial court to balance certain factors, including:

> [T]he time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Daniels*, 311 Mich App 257, 273; 874 NW2d 732 (2015) (citation omitted).]

Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Evidence offered under MCL 768.27b is also subject to exclusion under MRE 403.

The trial court did not abuse its discretion by refusing to exclude the evidence under MRE 403. The testimonies of the other-acts witnesses, specifically their descriptions of how defendant generally treated and targeted young, vulnerable women—by offering them enticements to lure them to motels, his efforts to engage them in prostitution or sexually assault them, and to threaten and assault them when they resisted complying with his demands—was highly probative of defendant's plan or scheme to use these women for his own financial gain or to satisfy his personal interests as described by EC. Furthermore, the trial court gave a cautionary instruction advising the jury on the limited, permissible use of the evidence, which minimized any potential for unfair prejudice. See *People v Ericksen*, 288 Mich App 192, 199-200; 793 NW2d 120 (2010) ("Jurors are presumed to follow their instructions . . . ."). Accordingly, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## 2. CELL PHONE DATA

Defendant additionally argues that the trial court erroneously allowed the prosecution to introduce data extracted from two cell phones recovered from defendant at the time of his arrest. The extracted data included information about the charged offense, but also included several text messages, Internet searches, photographs, and videos associated with prostitution and human trafficking dating as far back as July 2017. Defendant argues that this evidence should have been excluded under MRE 404(b) because it does not tend to make a consequential fact any more or less probable.

Although these records do not fall within the scope of the human-trafficking charge as alleged in the information, the records were still highly probative of defendant's scheme or plan to prostitute women and engage in human trafficking during the relevant time period. The records showed that defendant was contacting people who were seeking women and arranging for meetings at various motels. Some messages provided rates for various services by women. This

evidence was highly probative of defendant's engagement in human trafficking during the charged timeframe, and therefore, would be admissible under MRE 404(b)(1).

Defendant also suggests on appeal that the prosecution failed to offer sufficient notice of this evidence. But, defendant does not offer any authority or argument explaining why this was improper. This argument is therefore abandoned on appeal. *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

Further, defendant makes a cursory argument that the investigating detective should not have been allowed to provide his opinion testimony that the telephone records showed evidence of human trafficking. However, because the detective's testimony was rationally based on his personal review of the records, it was admissible under MRE 701 (allowing a lay witness to offer testimony in the form of an opinion or inference if the opinion or inference is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue"). See *People v Oliver*, 170 Mich App 38, 49; 427 NW2d 898 (1988), citing MRE 701.

## IV. DEFENDANT'S STANDARD-4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. None of these arguments has merit.

## A. SEVERANCE

Defendant argues that the trial court erred by denying his motion to sever the CSC-III charge from the remaining two charges. We disagree.

## 1. STANDARD OF REVIEW

A trial court's decision on a motion to sever charges is reviewed for an abuse of discretion. *People v Breidenbach,* 489 Mich 1, 14-15; 798 NW2d 738 (2011); *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997). However, any factual findings relevant to the question whether joinder is permissible are reviewed for clear error, and any questions of law are reviewed de novo. *People v Williams,* 483 Mich 226, 231; 769 NW2d 605 (2009).

## 2. LAW AND ANALYSIS

Defendant moved to sever the CSC-III charge, asserting that it was based on a sexual assault in early June 2018, which was unrelated to the conduct that formed the basis for the other charged offenses. Defendant argued that whether his sexual encounter with EC in June 2018 was consensual was unrelated to the activities on July 20, 2018. Defendant alternatively requested that the trial court sever the CSC-III charge under MCR 6.120(B) because of unfairness to defendant, the potential for confusion or prejudice because of the nature of the evidence, and the complexity of the facts. The trial court denied defendant's motion.

MCR 6.120(A)[5] permits a prosecutor to charge a single defendant with two or more offenses, or to consolidate two or more informations against a single defendant for a single trial. Under MCR 6.120(C), a trial court "must sever for separate trials offenses that are not related as defined in subrule (B)(1)." A trial court generally is not required to sever charges that all stem from a series of connected acts. *Williams*, 483 Mich at 235.

The CSC-III charge was closely related to the other charges. EC testified that defendant developed a personal relationship with her, and then exploited that relationship by persuading her to perform acts of prostitution and require her to turn the money over to him. EC also described how defendant used threats, force, coercion, and other similar tactics to get her to cooperate with his plan to prostitute her. According to EC, the sexual assault was one example of defendant's use of force and violence to cause her to fear him and to coerce her to continue to comply with his demands to engage in acts of prostitution. There was ample evidence that all of the charged offenses were related because they involved a series of connected acts or acts constituting parts of a single scheme or plan. Accordingly, the trial court did not abuse its discretion by denying defendant's motion to sever the charges.

## B. PROSECUTORIAL ERROR

Defendant argues that a new trial is required because of the prosecutor's error.[6] We disagree.

## 1. STANDARD OF REVIEW

To preserve a claim of prosecutorial error, a defendant must timely and specifically challenge the prosecutor's statements or conduct. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Defendant did not object to the prosecutor's conduct in the trial court on the ground of prosecutorial misconduct. Thus, his claims of prosecutorial error are unpreserved. We review unpreserved claims of prosecutorial error for plain error affecting defendant's substantial rights. *People v Abraham,* 256 Mich App 265, 275; 662 NW2d 836 (2003).

---

[5] MCR 6.120(A) states: "The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial."

[6] Defendant refers to the prosecutor's actions as "misconduct." Although "prosecutorial misconduct" is a commonly accepted term of art in criminal appeals, it is a misnomer when referring to allegations that do not involve violations of the rules of professional conduct or illegal activity. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Less egregious conduct involving inadvertent or technical error is should be deemed "prosecutorial error." *Id*. at 88. Defendant in this case does not allege a violation of the rules of professional conduct, or illegal activity by the prosecutor. Therefore, we refer to defendant's allegations using the term "prosecutorial error."

## 2. LAW AND ANALYSIS

The test for prosecutorial error is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). A prosecutor commits error by "abandon[ing] his or her responsibility to seek justice and, in doing so, den[ying] the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) (citation omitted).

A defendant's right to due process is violated when a prosecutor knowingly allows false testimony from a witness to go uncorrected. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). In *People v Loew*, 340 Mich App 100, 128; 985 NW2d 255 (2022), this Court observed:

> Perjury has been defined as a willfully false statement regarding any matter or thing, if an oath is authorized or required . . . . [A] prosecutor's knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. Thus, to prove prosecutorial [error] on the basis of perjury, a defendant must show two things—first, that a witness knowingly made a false statement, and second, that the prosecutor knowingly elicited the false statement. [Quotations marks and citations omitted.]

The defendant has the burden of demonstrating that a witness's testimony was in fact false. See *People v Bass*, 317 Mich App 241, 272-274; 893 NW2d 140 (2016).

EC testified during defendant's preliminary examination that, 15 minutes before TK arrived at the motel, defendant told her that she was "to do the thing[s] that were expected of" her. EC denied that defendant used more explicit language. EC was asked what she meant by "the things that were expected of her" and she testified that she was to have intercourse for money. At trial, EC testified that when she was in the motel room with defendant on July 20, 2018, defendant told her that a man would be coming to the room and she knew then that either she or ML would be prostituting. She further testified at trial that defendant explicitly instructed her that, when the man arrived, she was to have sex with him and collect the money.

Defendant argues that this variance in testimony constituted perjured testimony. We disagree. Although EC used different language to explain what defendant told her to do when TK arrived, the substance of her testimony at both proceedings was the same—that defendant expected her to engage in sex with TK for money. Thus, defendant has not demonstrated that EC gave any false testimony that required correction. "Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *Bass*, 317 Mich App at 275.

Defendant next argues that the police or prosecution violated his right to due process by failing to preserve a third cell phone that defendant alleges was taken from him at the time of his arrest. The record does not support this claim.

Defendant repeatedly claimed in the trial court that the police seized three cell phones from him at the time of his arrest, and he demanded production of video recordings from the third phone. The prosecutor maintained that only two phones were recovered. Defendant's claim of a third

phone lacks factual support. Therefore, his claim that the prosecution violated his due process rights is without merit.

Defendant also claims that the prosecutor failed to comply with MCL 780.701 because it did not obtain an order granting immunity to TK. Before TK testified at defendant's preliminary examination, the prosecutor stated on the record that the prosecutor's office had no intention of charging TK with any crime related to this matter. After the case was bound over to the circuit court, defendant requested any plea or immunity agreements, including any agreements related to TK. The prosecutor denied that there were any agreements beyond what was stated on the record at the preliminary examination.

Defendant's claim of an immunity agreement is misplaced. The prosecution denied that there was a grant of immunity of any kind. The prosecution's decision not to prosecute EC was disclosed to defendant at his preliminary examination. This is not a grant of immunity as contemplated by MCL 780.701. Therefore, defendant has not demonstrated that MCL 780.701 is applicable or shown that his right to due process was violated.

Defendant next argues that the prosecution suppressed dashcam and bodycam video footage from the traffic stop of TK, in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). According to the prosecutor, no bodycam video footage of the traffic stop existed because the Pittsfield Township police did not have body cameras at that time. The dashcam video footage was provided to standby defense counsel. Accordingly, defendant's claim of a *Brady* violation fails.

Defendant also complains that the prosecution failed to provide him with GPS information associated with the two cell phones recovered by the police at the time of defendant's arrest. The record discloses that the police searched the two cell phones and extracted data that included text messages, Internet searches, videos, and photographs. During closing argument, defense counsel argued that the prosecution could not prove that he was where he was alleged to be because it had failed to obtain the GPS coordinates from his cell phones.

"For due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). "Although [the prosecution] is required to disclose evidence that has been developed, it is not required to develop evidence . . . that defendant hopes will provide him with a defense." *People v Green*, 310 Mich App 249, 256; 871 NW2d 888 (2015). Because the prosecution had no duty to develop this evidence, defendant cannot establish a due-process violation. Furthermore, because defendant has not made an appropriate offer of proof to demonstrate factual support for this claim, he has not shown that an evidentiary hearing on this issue is warranted.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. STANDARD OF REVIEW

Defendant also makes several claims of ineffective assistance of counsel. Because defendant did not raise these claims in a motion for a new trial or request for an evidentiary hearing in the trial court, and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004).

### 2. LAW AND ANALYSIS

To establish ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which requires this Court to consider "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022). Defendant must also demonstrate that he was prejudiced by counsel's error. To establish prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "Reasonable probability means 'a probability sufficient to undermine confidence in the outcome.' " *Id*.

When evaluating claims of ineffective assistance of counsel, a defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy or assess counsel's competence with the benefit of hindsight. *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019); *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). But "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks, citation, and brackets omitted). Counsel will be found ineffective if a strategic decision was not sound or reasonable. *People v Cline,* 276 Mich App 634, 637; 741 NW2d 563 (2007). Failure to advance a meritless argument or raise a futile objection does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

The burden is on the defendant to establish the factual predicate for his claims. *Carbin*, 463 Mich at 600. To the extent that defendant requests that this Court remand this matter for an evidentiary hearing to further develop defendant's claims, remand is not warranted if a defendant fails to demonstrate that further factual development will advance his position, see *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995), or if a defendant fails to identify facts that could provide a basis for relief, see *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). We also note that defendant represented himself for a significant portion of the pretrial proceedings, with the assistance of standby counsel. A defendant who succeeds in asserting his right to self-representation will be held to the same standards as a member of the bar, and his errors and omissions cannot be the basis of a successful appeal on the ground of ineffective assistance of counsel. *People v Burden*, 141 Mich App 160, 164; 366 NW2d 23 (1985). Against this backdrop, we will consider each of defendant's claims of ineffective assistance of counsel.

Defendant first argues that defense counsel did not properly investigate the case because counsel failed to obtain a video recording of a sexual encounter between defendant and EC that would have shown them engaging in consensual sex. EC testified at the preliminary examination that such a video recording existed, but she was adamant that it was not made on the day of the charged sexual assault. EC further testified that she had engaged in consensual sex with defendant on other occasions, including when the video recording was made. Therefore, defendant has not overcome the presumption that defense counsel reasonably determined that the video evidence would not have aided his defense. We further reject defendant's request for an evidentiary hearing because there is no basis for concluding that further factual development is necessary.

Defendant next claims that defense counsel prevented him from testifying, thereby barring him from raising a consent defense. But, defendant confirmed on the record that he and defense counsel discussed defendant's right to testify and that he chose to invoke his right not to testify. Thus, the record does not support defendant's claim that he was prevented from testifying.

Next, defendant contends that defense counsel was ineffective for not using a private investigator to help locate ML and produce her as a witness at trial. The record indicates that the trial court approved funds to allow defense counsel to hire a private investigator, but the record does not disclose whether counsel attempted to have the investigator locate ML, or even whether counsel was aware of ML's location. Further, there is no indication that defense counsel requested that the prosecutor produce ML for trial. Regardless, defendant has not submitted an affidavit or other offer of proof showing what ML would have testified to, or how that would have bolstered defendant's case. There is therefore no basis for concluding that defense counsel performed deficiently by failing to make further efforts to locate ML and produce her as a witness. Likewise, defendant cannot demonstrate that he was prejudiced by the absence of her testimony, and remand for an evidentiary hearing on this claim is not warranted.

Defendant further argues that defense counsel was ineffective for not impeaching EC's trial testimony with allegedly inconsistent statements that she made to the police on July 20, 2018. First, defendant has not submitted copies of the allegedly inconsistent statements to the police. Second, decisions regarding how to question a witness and conduct cross-examination is a matter of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). The record discloses that defense counsel extensively cross-examined EC, including questioning her about prior statements to the police. Defendant has not shown that counsel's cross-examination was unsound or objectively unreasonable. *Cline*, 276 Mich App at 637.

Defendant next argues that defense counsel was ineffective for not investigating and retrieving cellular location data from his cell phone carrier and not requesting that the two cell phones seized by the police be analyzed by a third party. The record shows that defense counsel commented that she was considering asking the defense experts to examine the cell phones. Thus, the record discloses that counsel considered this option. However, there is no evidence that further investigation of defendant's cellular location data or an independent examination of defendant's cell phones would have produced any evidence favorable to defendant. Defendant makes a tangential argument that defense counsel was deficient for not obtaining backup data for a missing third cell phone through defendant's iCloud account. Once again, however, defendant has not provided an offer of proof as to what this evidence would have shown. Thus, defendant has failed to establish a factual predicate for his claims. *Carbin*, 463 Mich at 600. Without an appropriate

offer of proof, defendant has not demonstrated that he is entitled to an evidentiary hearing on either issue.

Next, defendant claims that he relied on inaccurate advice from defense counsel that caused him to reject a plea offer that included a sentence agreement for a minimum sentence of 32 months' imprisonment. According to defendant, counsel advised him that, if defendant went to trial, his sentence under the guidelines would be 36 months to 20 years' imprisonment. Defendant also asserts that he told counsel that he wanted to appeal his constitutional issues, and counsel advised him that the only way to do that was by going to trial. Defendant asserts that he relied on counsel's advice in deciding to reject the plea offer. Defendant now argues that counsel was ineffective for (1) not properly advising him of his applicable guidelines range,[7] and (2) failing to advise him that he could enter a conditional plea, which would still allow him to appeal his constitutional issues.

In *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), our Supreme Court explained what a defendant must establish to prove ineffective assistance of counsel in the context of a plea offer. First, "that counsel's representation fell below an objective standard of reasonableness . . . ." *Id*. at 592. And, second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. In demonstrating prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice." *Id*. Where, as here, the alleged prejudice resulting from counsel's ineffectiveness is that the defendant rejected a plea offer and stood trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e*., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*.]

When evaluating a plea offer, "[d]efense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994).

In this case, defendant relies solely on his unsupported allegations to argue that defense counsel gave him deficient legal advice. The record does not disclose what discussions defendant had with counsel regarding the prosecution's plea offer, what representations defendant may have made about any considerations that could impact his decision whether to accept or reject the plea offer, or what advice counsel gave to defendant. Defendant has not submitted an affidavit or other offer of proof addressing any of these matters. The unsupported allegations in defendant's

---

[7] At sentencing, the trial court calculated defendant's guidelines ranges to be 72 to 120 months' imprisonment for the pandering conviction, 57 to 95 months' imprisonment for the CSC-III conviction, and 19 to 38 months' imprisonment for the human-trafficking conviction.

Standard 4 Brief are insufficient to establish the factual predicate for this claim, or to justify a remand for an evidentiary hearing. As to defendant's related argument that he was not advised about the option of a conditional plea, defendant has not offered this Court any evidence that the prosecutor and the trial court would have agreed to a conditional plea. MCR 6.301(C)(2). Accordingly, defendant has not demonstrated a reasonable probability that a conditional plea would have been accepted by the trial court. For these reasons, this ineffective-assistance claim cannot succeed.

Defendant also argues that defense counsel was ineffective for failing to challenge the validity of defendant's arrest. The record does not support this claim—thus this argument is meritless. Defendant contends that the police did not have probable cause to arrest him at the motel. As is discussed in Part IV-D of this opinion, the police properly entered the motel room after knocking on the motel room door and being granted permission to enter the room. While in the room, the police noticed a pair of men's shoes, which permitted them to conduct a protective sweep of the room. Defendant was found hiding in the bathroom and taken into custody. After the police spoke to EC, defendant was arrested.

Defendant concedes that the police were permitted to initially detain him and conduct a pat-down check for weapons pursuant to *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), but he argues that once the police determined that he did not have any weapons and was no longer a threat to officers' safety, he should have been released. Under *Terry*, however, "[a] brief, on-the-scene detention of an individual is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). The police had information that prostitution was occurring in the motel room and then found defendant hiding in the bathroom. This was sufficient to justify defendant's continued detention while the police conducted their on-the-scene investigation. After speaking to EC, coupled with the information the police had already obtained from TK, the police had probable cause to arrest defendant on the basis of the prostitution activity occurring in the motel room. Trial counsel was not ineffective for failing to file a futile motion.

## D. THE SEARCH OF THE MOTEL ROOM

Defendant argues that the trial court erred by denying his motion to suppress on the ground that the police unlawfully entered and searched the motel room, in violation of his Fourth Amendment rights. We disagree.

### 1. STANDARD OF REVIEW

A trial court's findings of fact at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles*, 218 Mich App 133, 136; 553 NW2d 357 (1996). However, the trial court's application of constitutional standards regarding searches and seizures is entitled to less deference when the facts are uncontested. *Williams*, 472 Mich at 313. Accordingly, the trial court's ultimate ruling on a motion to suppress is reviewed de novo. *Id.*

## 2. LAW AND ANALYSIS

Preliminarily, defendant raises the issue of standing and his expectation of privacy, and there is no dispute that he was staying in the motel room. "[A]n occupant of a hotel or motel room is [] entitled to the Fourth Amendment protection against unreasonable searches and seizures." *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993) (citations omitted). Thus, he has standing to contest the validity of the search.

The prosecutor justified the warrantless entry of the motel room by classifying the encounter as a "knock and talk" procedure, which is not a search under Fourth Amendment's warrant requirement. The knock-and-talk procedure typically is used when police have knowledge of potential illegal activity that they believe requires further investigation, but does not provide probable cause for a search warrant. Instead, police approach the person suspected of engaging in illegal activity at the person's residence, i.e., knock on the front door, identify themselves as police officers, and request consent to search for the suspected illegality or illicit items. See *People v Frohriep*, 247 Mich App 692, 697; 637 NW2d 562 (2001).

When the police approach a home and perform a proper knock and talk, there is no search under the Fourth Amendment. *People v Frederick*, 500 Mich 228, 234; 895 NW2d 541 (2017). The appropriate scope of a knock and talk is the same as the "implied license" that is granted in general to all kinds of peddlers, solicitors, and hawkers. *Id*. A police officer may approach a home and knock without a warrant because that is no more than any private citizen would be entitled to do. *Id*. at 234-235 (citation omitted).

The police officers were entitled to approach the motel room and knock at the door to gather additional information after receiving a report of suspected prostitution activity in the room. This procedure was conducted at a reasonable hour of the day (shortly after 6:00 p.m.) and the testimony indicated that ML voluntarily opened the door and began to speak with the police. After ML opened the door, she went outside and spoke with one of the officers. The door remained open and an officer testified that he introduced himself to EC, the other woman in the room who matched the description provided by TK, and asked to speak with her. At the evidentiary hearing, the officer was not sure who gave him permission to enter, but he agreed that he testified at defendant's preliminary examination that he asked for permission to enter the room and it was EC who gave him permission to enter. The trial court also reviewed the preliminary examination testimony when it ruled on defendant's motion to suppress. Thus, there was evidence that the police entered the motel room after EC gave them permission. Accordingly, the trial court did not clearly err by finding that the police were given consent to enter the motel room.

We disagree with defendant's contention on appeal that he had sole authority to give the police permission to enter the motel room after the female guest, who had rented the room, left the motel. Consent to search a motel or hotel room may be obtained from the person whose property is searched or from a third party who possesses common authority over the premises. Whether a third party has common authority to consent derives from the mutual use of the property by persons having joint access or control over the property. *People v Goforth*, 222 Mich App 306, 311-312; 564 NW2d 526 (1997), following *Illinois v Rodriguez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990), and *United States v Matlock*, 415 US 164, 171 n 7; 94 S Ct 988; 39 L Ed 2d 242 (1974). Furthermore, a search may be upheld on the basis of a third party's consent if the police,

at the time of entry, reasonably believed that the person possesses common authority over the premises, even if that person actually lacks authority. *Goforth*, 222 Mich App at 312.

In this case, TK advised the police that he met a woman at the motel room and she allowed him inside. When the police arrived at the motel room, knocked on the door, and the door was answered, EC, who matched the description provided by TK, was inside the room. She was never asked for consent to search the room, but she agreed to allow the police to enter the room. Because EC clearly occupied the room, and because she matched the description of the woman who TK met for the purpose of engaging in sex in the room in exchange for money, the officer had a reasonable basis for believing that EC had common authority over the room. There was no evidence of any circumstances that would have given the officer reason to question whether EC had authority to allow him to enter the motel room. Thus, up to that point, there was no action by the police that amounted to a search under the Fourth Amendment because the police had not exceeded the scope of the "knock and talk."

While inside the room, the officer saw a pair of men's shoes on the floor near the bathroom, which provided a reasonable basis for believing that a male was also present in the room. The shoes were in plain sight and visible from the officer's location in the room where he had a right to be based on his permission to be in the room. The shoes provided probable cause to believe that there was a male occupying the motel room, which was an exigent circumstance that justified a search of the room without a warrant to ensure the safety of the officers. *People v Oliver*, 417 Mich 366, 384; 338 NW2d 167 (1983); see also *In re Forfeiture of $176,598*, 443 Mich 261, 267-268; 505 NW2d 201 (1993) (the exigent circumstances exception allows the police to search a dwelling without a warrant if there is a risk of danger to the police or others inside or outside the dwelling). Accordingly, the search of the motel room did not violate defendant's Fourth Amendment rights.

### E. DEFENDANT'S HUMAN-TRAFFICKING CONVICTION

Defendant argues that the evidence was insufficient to support his conviction of human trafficking. We disagree.

### 1. STANDARD OF REVIEW

Our review of this claim requires us to review the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). We are required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *Id.* It is for the trier of fact, not this Court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. *Id.*

### 2. LAW AND ANALYSIS

Count III of the information charged defendant with human trafficking, contrary to MCL 750.462b, which states: "A person shall not knowingly recruit, entice, harbor, transport, provide, or obtain an individual for forced labor or services." " 'Forced labor or services' means labor or services that are obtained or maintained by force, fraud, or coercion." MCL 750.462a(g).

-17-

Defendant claims that there was no evidence that he used force, fraud, or coercion to require EC to engage in prostitution on July 20, 2018. He emphasizes that EC testified that she went to the motel to spend her birthday with defendant, and that she sent him explicit photographs and messages to make him excited to see her. Defendant also argues that EC voluntarily met with TK, and that he did not force her to do so. Defendant's arguments mischaracterize EC's testimony.

EC testified that after she met defendant, defendant made her prostitute herself by engaging in sex with others in exchange for money that defendant would collect. EC explained that defendant initially told her it would be a one-time thing, but defendant continued to involve her in this activity and she continued to participate because defendant promised that he would help her buy a house and a car. EC said she eventually told defendant that she did not want to continue this activity, but defendant physically assaulted her and threatened her and her family if she did not continue to comply with his demands, causing her to fear defendant.

EC testified that defendant contacted her on July 20, 2018, and invited her to the motel. According to EC, defendant led her to believe they were celebrating her birthday. She took a cab to the motel, which defendant paid for. EC admitted sending defendant nude and explicit photographs and text messages to make him excited to see her. After EC arrived at the motel, defendant told her that a man would be coming to the motel, and she realized that defendant expected her to prostitute herself. EC testified that she told defendant that she was not going to do it, but defendant instructed her to have sex with the man, collect the money, and give it to him. She complied because she was afraid of him.

EC's testimony, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that defendant was in an ongoing relationship with EC that involved EC engaging in sexual activity with others at defendant's direction and for defendant's financial benefit. The evidence was sufficient to support defendant's conviction of human trafficking beyond a reasonable doubt.

We affirm defendant's convictions of CSC-III and human trafficking, but vacate his conviction and sentence for pandering. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen

-18-